IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **FREDERIC E. MCGREW**, | Case No. 3:13-cv-01909-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN**, Commissioner of Social Security, | |
| Defendant. | |

Bruce W. Brewer, P.O. Box 421, West Linn, OR 97068. Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Ronald K. Silver, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97201-2902; Gerald J. Hill, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-7075. Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Frederic E. McGrew ("Plaintiff") seeks judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying his application

for disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI")

PAGE 1 – OPINION AND ORDER

under Title XVI of the Social Security Act. For the reasons discussed below, the Court REVERSES the Commissioner's decision and REMANDS for an immediate award of benefits.

### STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff was born on August 8, 1955. AR 180. Plaintiff protectively filed an application for DIB on May 10, 2010, and for SSI on May 15, 2010. AR 14, 180, 184. In each, Plaintiff alleged a disability onset date of December 31, 2007. AR 14, 180, 184. Plaintiff was 52 years old as of the alleged disability onset date and is currently 59 years old. Both of Plaintiff's claims were denied initially on July 30, 2010, and upon reconsideration on December 3, 2010. AR 14. Plaintiff requested a hearing before an ALJ, at which Plaintiff testified on April 18, 2012. *Id.* The ALJ affirmed the Commissioner's decision on May 25, 2012, finding Plaintiff not disabled and, thus, not entitled to DIB or SSI. AR 24-25. The Appeals Council denied Plaintiff's request for review on August 21, 2013, making final the ALJ's decision. AR 1. Plaintiff now appeals to this Court.

### B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.     Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay

or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

PAGE 4 – OPINION AND ORDER

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,

the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54;

*Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ performed the sequential analysis after noting that Plaintiff met the necessary

insured-status requirements. At step one, the ALJ found that Plaintiff did not engage in

substantial gainful activity after the alleged disability onset date. AR 16. At step two, the ALJ

identified Plaintiff's severe impairments, including an adjustment disorder with mixed anxiety

and depressed mood as well as borderline intellectual functioning. AR 17.

At step three, the ALJ found that Plaintiff does not meet the severity requirements of any

listed impairment in 20 C.F.R. Part 404, Subpt. P, App'x 1 (hereinafter "Listing"). AR 17. The

ALJ specifically found that Plaintiff does not have an intellectual disability under

Listing 12.05C. *Id.* To support this finding, the ALJ relied on neuropsychologist

James Bryan, Ph.D., whose interpretation of Independent Living Scales indicated that at the time

of Plaintiff's examination, he had generally average community living skills. *Id.* The ALJ also

identified that Plaintiff has a valid Oregon driver's license, despite his inability to read books or

PAGE 5 – OPINION AND ORDER

newspapers and his attainment of only a 10th-grade education in special education classes.

AR 17-18.

The ALJ next assessed Plaintiff's RFC. The ALJ determined that:

> [Plaintiff has the RFC] to perform a full range of work at all
> exertional levels but with the following nonexertional limitations:
> He would work best in a simple, routine, repetitive work
> environment without public contact. He would work best alone and
> not as part of a team in order to complete assigned tasks. The
> position should not require written English literacy[] because he
> would have difficulty with reading.

AR 19. The ALJ found that Plaintiff's medically determinable impairments could reasonably be

expected to produce Plaintiff's symptoms. *Id.* The ALJ then found, however, that Plaintiff was

not fully credible regarding the intensity, persistence, and pace of the symptoms. *Id.* The ALJ

gave significant weight to Dr. Bryan's assessment, which opined that Plaintiff did not require

formal mental health treatment and would be able to perform semi-skilled manual assembly and

labor tasks. AR 20. The ALJ also gave significant weight to Wendi Adams, Psy.D. Dr. Adams

opined that Plaintiff was socially appropriate, pleasant, and best-suited for work involving simple

instructions. *Id.*

The ALJ gave some weight to the opinions of Disability Determination Services

consultants who opined on Plaintiff's ability to perform simple, routine tasks and occasionally

familiar, complex tasks. AR 22. Although the ALJ credited Plaintiff's testimony regarding his

difficulty with social interaction, the ALJ discredited Plaintiff's reporting of symptoms because

of Plaintiff's past ability to work as a paper recycler and handyman, Plaintiff's ability to drive,

Plaintiff's report that his depressive symptoms are often situational and linked to his having little

work and little money, and Plaintiff's inconsistency in reporting how much he is able to work.

AR 20-22. Additionally, the ALJ gave little weight to lay testimony regarding observations of

Plaintiff's functioning and little weight to a mental health counselor's RFC assessment of

Plaintiff because the testimony and assessment were inconsistent with other testimony, were based on Plaintiff's own reporting, and lacked objective evidence. AR 21-22.

At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a paper recycler—work that is not precluded by Plaintiff's RFC. AR 23. Although the ALJ found Plaintiff not disabled on this basis, the ALJ also performed an alternative analysis at step five. Based on an exchange with a vocational expert ("VE"), the ALJ identified jobs that exist in the national economy that Plaintiff can perform. AR 23-24. These jobs include production assembler, cleaner and polisher, and dishwasher. AR 24. The ALJ found Plaintiff not disabled on this basis as well.

## DISCUSSION

Plaintiff alleges the following errors: (A) the ALJ failed to find Plaintiff disabled under Listing 12.05C; (B) the ALJ improperly rejected Plaintiff's testimony and lay testimony; (C) the ALJ did not properly credit portions of the testimony of Dr. James Bryan and social worker Emily Niemi; and (D) the ALJ improperly credited VE testimony that was unsupported by the Dictionary of Occupational Titles. Because the Court finds that the ALJ erred in failing to find Plaintiff disabled under Listing 12.05C, the Court does not address Plaintiff's remaining allegations of error.

### A. Listing 12.05C

Plaintiff primarily argues that he is disabled because he meets Listing 12.05C. Listing 12.05C refers to intellectual disabilities. To meet Listing 12.05C, a claimant must demonstrate "(1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) an IQ score of 60 to 70; and (3) a physical or other mental impairment causing an additional and significant work-related limitation." *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013). A work-related limitation is "significant" "when its

effect on a claimant's ability to perform basic work activities is more than slight or minimal."
*Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir. 1987).

The ALJ accepted that Plaintiff has a valid IQ between 60 and 70, satisfying the second prong of Listing 12.05C. The ALJ also found at step two that Plaintiff has the severe impairment of an adjustment disorder with anxiety and depressive symptoms. The ALJ found, however, that Plaintiff's "generally average community living skills," valid driver's license, and "good work history with earnings consistent with substantial gainful activity" preclude a finding of impairment under Listing 12.05C. AR 18. It is not clear whether the ALJ relied on these findings to conclude that Plaintiff's impairments did not significantly limit his physical or mental ability to do basic work activities as required in Listing 12.05C, or to conclude that Plaintiff did not currently have deficits in adaptive functioning as required in Listing 12.05's introductory paragraph. Either way, the ALJ's conclusion was error.

The ALJ's finding at step two that Plaintiff had the severe impairment of an adjustment disorder with anxiety and depressive symptoms satisfies the work-related limitation requirement of Listing 12.05C. *See, e.g.*, *Campbell v. Astrue*, 2011 WL 444783, at *18 (E.D. Cal. Feb. 8, 2011) ("Thus, a finding of severe impairment at step two is a *per se* finding of 'impairment imposing additional and significant work-related limitation of function' as employed in the second prong of Listing 12.05C." (collecting cases)); *see also* Listing 12.00A ("For paragraph C, we will assess the degree of functional limitation the additional impairment(s) imposes to determine if it significantly limits your physical or mental ability to do basic work activities, i.e., is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c)."). Thus, to the extent the ALJ found that Plaintiff's impairment did not cause an additional and significant work-related limitation, that finding was erroneous.

PAGE 8 – OPINION AND ORDER

It appears that the ALJ was ruling that Plaintiff did not adequately demonstrate deficits in adaptive functioning sufficient to satisfy the first prong. In so holding, the ALJ erred in applying the requirements of the introductory paragraph of Listing 12.05.

Although the introductory paragraph of Listing 12.05 is a diagnostic description for intellectual disability rather than a specific criterion, it functions as a substantive requirement. *See* Listing 12.00(A) ("If your impairment satisfies the diagnostic description in the introductory paragraph [of Listing 12.05] and any one of the four sets of criteria, we will find that your impairment meets the listing."); *Kennedy*, 738 F.3d at 1176. Because the introductory paragraph of Listing 12.05 requires that the "evidence demonstrates or supports onset of the impairment before age 22," the first prong appears "intended to limit coverage to an innate condition, rather than a condition resulting from a disease or accident in adulthood." *Gomez v. Astrue*, 695 F. Supp. 2d 1049, 1061 (C.D. Cal. 2010) (citation and quotation marks omitted). The introductory paragraph also provides that "[t]he required level of severity for [Listing 12.05] is met when the requirements in A, B, C, or D are satisfied." Thus, for purposes of Plaintiff's alleged disability, the introductory paragraph (prong one) establishes that a qualifying intellectual disability exists, and the criteria within "C" (prongs two and three) establish its severity.

As discussed above, Plaintiff satisfies the second and third prongs to meet Listing 12.05C. The remaining issue is whether Plaintiff has an intellectual disability that falls within the ambit of Listing 12.05, per its introductory paragraph. The introductory paragraph requires (1) subaverage intellectual functioning and (2) deficits in adaptive functioning that must have manifested before age 22.[1] When, as here, only deficits in adaptive functioning are in

---

[1] Some circuits have held that the temporal aspect of the first prong also requires evidence of subaverage intellectual functioning before age 22. *See Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009); *Markle v. Barnhart*, 324 F.3d 182, 187 (3d Cir. 2003).

PAGE 9 – OPINION AND ORDER

question, some district courts within the Ninth Circuit have found evidence in the record of

deficits in adaptive functioning *before* age 22 to be dispositive, without reaching a conclusion

regarding current deficits in adaptive functioning and without specifically analyzing whether the

introductory paragraph is limited to a claimant's functioning before age 22. In *Pedro v.*

*Astrue*, 849 F. Supp. 2d 1006 (D. Or. 2011), for example, the court discussed the claimant's

current adaptive functioning but concluded that "the record contains evidence demonstrating

deficits in adaptive functioning prior to age 22. [Listing 12.05] does not require more." *Id.* at

1014; *see also Anthony v. Colvin*, 2014 WL 3792780, at *4 (C.D. Cal. July 31, 2014) (remanding

for determination of whether the claimant's intellectual disability manifested before age 22 after

finding that the claimant satisfied the second and third prongs); *Huber v. Astrue*, 2010

WL 4684021, at *4 (D. Ariz. Nov. 12, 2010) ("The record is replete with evidence demonstrating

deficits in adaptive function during Plaintiff's developmental period, that is, before age 22.

Listing 12.05 requires nothing more."). Some circuit courts, however, have placed greater weight

on claimants' *current* deficits in adaptive functioning. *See, e.g.*, *Randall v. Astrue*, 570 F.3d 651,

662 (5th Cir. 2009); *Johnson v. Barnhart*, 390 F.3d 1067, 1071 (8th Cir. 2004). The U.S. Court

of Appeals for the Ninth Circuit has not directly addressed this issue.

---

Although the Ninth Circuit has not addressed this issue directly, it has indicated that
circumstantial evidence is sufficient to establish that an impairment began before adulthood.
*Hernandez v. Astrue*, 380 Fed. App'x 699, 700-01 (9th Cir. 2010). Additionally, this Court has
recognized that "a valid adult IQ score can be reflective of an impairment that manifested during
the claimant's developmental period." *Brooks v. Astrue*, 2012 WL 4739533, at *5 (D. Or. Oct. 3,
2012) (citing cases holding similarly). Such circumstantial evidence is relevant because Listing
12.05 only requires that the evidence "demonstrates *or supports* onset of the impairment before
age 22." Listing 12.05 (emphasis added). Here, the record indicates that Plaintiff's subaverage
intellectual functioning manifested before age 22 because the ALJ accepted Plaintiff's valid adult
IQ scores, which fall within the lowest one percentile. Moreover, the Commissioner
acknowledges that Plaintiff's subaverage intellectual functioning manifested before age 22.

Listing 12.05's introductory paragraph requires that the *onset* of adaptive functioning deficits occur before age 22, but the paragraph does not specifically confine the analysis only to the time period before age 22. As noted by the Ninth Circuit, Listing 12.05 requires that a claimant demonstrate deficits that "initially manifested" before age 22. *Kennedy*, 738 F.3d at 1176. That a condition "initially" manifests before age 22 implies that the condition remains ongoing. Thus, this Court interprets the introductory paragraph of Listing 12.05 to require a claimant to demonstrate current deficits in adaptive functioning in addition to demonstrating that those deficits initially manifested before age 22. Because the severity of the deficits is established by sections A, B, C, and D, the Court does not assess severity in considering whether a claimant meets the requirements of Listing 12.05's introductory paragraph.

Evidence that demonstrates deficits in adaptive functioning before age 22 may be circumstantial. Relevant circumstantial evidence includes difficulties with reading and writing, attendance of special education classes, and dropping out of school. *Pedro*, 849 F. Supp. 2d at 1011-12; *Campbell*, 2011 WL 444783, at *17; *Payne v. Astrue*, 2010 WL 654319, at *11 (D. Ariz. Feb. 23, 2010). Here, the ALJ accepted that Plaintiff attended special education classes before the age of 22, dropped out of school in approximately the 10th grade, and cannot read or write. Thus, the record contains undisputed evidence that Plaintiff experienced deficits in adaptive functioning before age 22.

The record also contains evidence of current deficits in Plaintiff's adaptive functioning. Plaintiff's RFC, as determined by the ALJ, incorporated such deficits.[2] The ALJ identified that

---

[2] Deficits in adaptive functioning refer to a "failure to meet developmental and sociocultural standards for personal independence and social responsibility." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 33 (5th ed. 2013). They limit functioning in at least one activity of daily life, including communication and social participation in school, work, or other environments. *Id*.

Plaintiff is unable to work in areas that require English literacy or in areas that involve public contact or interaction with others to complete assigned tasks. Plaintiff remains unable to read or write.

It appears the ALJ found, based on Plaintiff's living skills, driver's license, and previous work history, that Plaintiff does not currently have deficits in adaptive functioning. The ALJ's reliance on these findings was error. Having some work history and possessing average living skills and the ability to drive does not indicate that a claimant does not have deficits in adaptive functioning. *See Brown v. Sec'y of Health and Human Servs.*, 948 F.2d 268, 270 (6th Cir. 1991) (daily activities such as using public transit, driving, making change at a grocery store, doing laundry and cleaning, following a road map, and reading a newspaper are not inconsistent with Listing 12.05); *Pedro*, 849 F. Supp. 2d at 1014 ("[D]aily activities such as reading, driving, and cleaning are not necessarily inconsistent with [meeting Listing 12.05C]."); *Huber*, 2010 WL 4684021, at *4 (noting the same); *see also Gomez*, 695 F. Supp. 2d at 1057 (noting that Listing 12.05 is structured differently than other mental disorder listings and that a claimant can satisfy Listing 12.05A-C "without having to demonstrate a disabling, or even severe, level of mental functional impairment"). Additionally, the existence of deficits in adaptive functioning is considered when analyzing the introductory paragraph of Listing 12.05 and the severity of those deficits is considered in subparts A through D. In sum, the introductory paragraph of Listing 12.05 requires evidence that deficits in adaptive functioning exist, not evidence that a claimant has no adaptive functioning skills.

Accordingly, the evidence in the record, accepted by the ALJ, demonstrates that Plaintiff satisfies the introductory paragraph of Listing 12.05. Because Plaintiff also meets the severity requirements of "C," the Commissioner's decision that Plaintiff does not meet Listing 12.05C is

not supported by substantial evidence. Therefore, the ALJ's finding of non-disability at step three is reversed.

## B. Remedy

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Id.* at 1100.

As discussed above, the ALJ erroneously concluded that Plaintiff does not satisfy the requirements of Listing 12.05C. When a claimant meets a listing and the duration is for longer than one year, the claimant is automatically considered disabled. *Fanning*, 827 F.2d at 634; *see also* 20 C.F.R. 416.920(d). Because the ALJ accepted evidence that demonstrates that Plaintiff meets all three prongs of Listing 12.05C, the correct application of the listing would require the ALJ to find Plaintiff disabled. A remand for further proceedings rather than an award of benefits "would needlessly delay effectuating the primary purpose of the Social Security Act," which is "to give financial assistance to disabled persons . . . ." *Holohan*, 246 F.3d at 1210 (quotation marks omitted). The Court, therefore, reverses the Commissioner's decision and remands for an immediate award of benefits.

## CONCLUSION

The Commissioner's decision that Mr. McGrew is not disabled is REVERSED and

REMANDED for an immediate award of benefits.

**IT IS SO ORDERED**.

DATED this 25th day of March, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

PAGE 14 – OPINION AND ORDER